Todd D. Carpenter (CA 234464)
tcarpenter@carlsonlynch.com
**CARLSON LYNCH, LLP**
1350 Columbia St., Ste. 603
San Diego, California 92101
Tel:    (619) 762-1900
Fax:    (619) 756-6991

*Attorneys for Plaintiffs and the Putative Class*
*[Additional counsel appear on signature page.]*

### IN THE UNITED STATES DISTRICT COURT

### FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTIAN AND JONNA SANDER, individually and on behalf of all others similarly situated, | Case No. 2:20-cv-01363 |
| Plaintiff, | CLASS ACTION |
| v. | **COMPLAINT AND JURY DEMAND** |
| CONSUMER CLUB, INC. d/b/a GETAROOM.COM, | |
| Defendant. | |

Plaintiffs Christian and Jonna Sander ("Plaintiffs") bring this action against Defendant Consumer Club, Inc. d/b/a Getaroom.com ("Defendant"), by and through the undersigned attorneys, individually and behalf of all others similarly situated, and allege, based on their investigation and upon information and belief, as follows:

### INTRODUCTION

1.    Defendant is a third-party hotel booking company that operates online and through the telephone. Defendant acts as a middleman and books hotel rooms for consumers instead of the customer booking directly with the hotel.

2.    Defendant's marketing deceptively misleads consumers into believing they are booking directly with the hotel itself. When contacted by telephone, Defendant's representatives identify themselves as the "reservations department."

Moreover, when asked directly by consumers if the number they dialed is the hotel itself, Defendant's representatives have falsely responded in the affirmative.

3.     After consumers receive a "confirmation" of the room reservation, they learn, for the first time, that they actually booked through Defendant, and not the hotel directly. Consumers also routinely observe that they are charged massive, undisclosed booking fees and charged more for their rooms than Defendant quoted them prior to booking.

4.     When consumers call to cancel their reservation because they were charged more than the agreed-upon price, they are informed—for the first time—that Defendant has a no cancellation policy and the reservation cannot be cancelled, *if* Defendant answers at all.

5.     Defendant's representatives do not inform consumers of the no cancellation policy during phone calls. Similarly, when booking online, Defendant requires consumers to agree to the "cancellation policy" but nowhere on the booking portal does Defendant disclose the "cancellation policy" is actually a no cancellation policy. Defendant includes a link to terms and conditions, but the link simply links back to the reservation confirmation page.

6.     Defendant also states the cancellation policy is coextensive with the hotel's cancellation policy, which is false, as consumers attempting to cancel their reservation with the hotel at which the reservation is made are informed they could cancel the reservation had they booked directly with the hotel, and must instead contact Defendant to cancel their reservation and (typically unsuccessfully) secure a refund.

7.     Thousands of consumers have complained to the Better Business Bureau and numerous other websites regarding the same deceptive business tactics, yet Defendant's unlawful practices continue unabated.

CLASS ACTION COMPLAINT

8.     Accordingly, Plaintiffs bring this action to redress Defendant's violations of various state consumer protection statutes, and to recover for Defendant's fraudulent concealment and unjust enrichment

## JURISDICTION AND VENUE

9.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 of the Class Action Fairness Act of 2005 because: (i) there are 100 or more class members, (ii) there is an aggregate amount in controversy exceeding $5,000,000, exclusive of interest and costs, and (iii) there is minimal diversity because at least one Plaintiff and the Defendant are citizens of different states. This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

10.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because Defendant transacts business in this District, is subject to personal jurisdiction in this District, and, therefore, is deemed to be a citizen of this District. Additionally, Defendant has advertised in this District and has received substantial revenue and profits from its sales in this District; therefore, a substantial part of the events and/or omissions giving rise to the claims occurred, in part, within this District.

11.     This Court has personal jurisdiction over Defendant because: it conducts substantial business in the District; a substantial part of the acts and omissions complained of occurred in the District; and it has intentionally and purposefully placed advertisements into the stream of commerce within California and throughout the United States.

## THE PARTIES

**Plaintiffs Christian and Jonna Sander**

12.     Plaintiffs are citizens and resident of California, and currently reside in Los Angeles County, California.

13.     In early November 2019, Plaintiffs were attempting to book a hotel at the Scandic Patria in Lappeenranta, Finland for later that month.

CLASS ACTION COMPLAINT

14.     Plaintiff Jonna Sander believed she was on the website for the Scandic Patria and took precautions to ensure that she was not on a third-party booking website.

15.     Believing that she was on the website for the Scandic Patria, Plaintiff made a reservation for the advertised rate of $141.14.

16.     Later that day, Plaintiffs received an email confirmation from Defendant. Plaintiffs learned for the first time that the reservation was booked through Defendant and not directly through the Scandic Patria.

17.     Upon information and belief, Plaintiffs believe that Defendant created a website to mimic or redirect them from the official website of the Scandic Patria in order to falsely induce Plaintiffs into reserving through Defendant instead of directly through the hotel.

18.     Not only did Defendant fraudulently induce Plaintiffs into booking the hotel reservation through Getaroom.com, it charged Plaintiffs $100.76 in "Tax Recovery Charges & Service Fees," which Defendant failed to disclose to Plaintiffs prior to making the reservation.

19.     In the fine print of the email, Defendant states that any fee amounts not charged by the hotel for Plaintiffs' booking will be "retain[ed] as part of the compensation for our and/or their services."

20.     At no point did Defendant provide any "service" to Plaintiffs other than falsely advertising it was the Scandic Patria and charging exorbitant fees that it neither disclosed to Plaintiffs nor ever refunded to them.

21.     Plaintiffs contacted Defendant to request cancellation of the room and/or a refund of the "Tax Recovery Charges & Service Fees" via telephone, but Defendant refused.

22.     Plaintiffs never used the reservation booked with Defendant.  Instead, Plaintiffs booked a new reservation directly with the Scandic Patria.

CLASS ACTION COMPLAINT

23.     Had Defendant adequately disclosed to Plaintiffs that it was a third-party booking company, and not the Scandic Patria, Plaintiffs would not have made their reservation.

24.     Plaintiffs suffered an ascertainable loss as a result of Defendant's omissions and/or misrepresentations associated with the cancellation policy and its purported "service" fees.

**Defendant**

25.     Defendant is a citizen of the State of Texas, was formed under the laws of Texas, and maintains a principal place of business located at 3010 Lyndon B Johnson Freeway, Suite 1550, Dallas, Texas 75234-2780.

26.     In or around September 2018, Court Square Capital Partners, a private equity firm headquartered in New York, New York, acquired a majority stake in Defendant.

27.     Defendant engages in continuous and substantial business throughout the United States, including in California.

**TOLLING OF STATUTES OF LIMITATION**

28.     Any applicable statute(s) of limitations has been tolled by Defendant's knowing and active concealment and denial of the facts alleged herein. Plaintiffs and members of the Class (defined below) could not have reasonably discovered the true facts related to Defendant's fraudulent conduct until shortly before this class action litigation was commenced.

**FACTUAL ALLEGATIONS**

**A.     Defendant's Business Model**

29.     Defendant operates as a third-party hotel booking company that serves as a middleman between consumers and their hotels of choice. Unfortunately for Plaintiffs and similarly situated consumers, however, Defendant provides little in the way of service beyond defrauding consumers and charging exorbitant, undisclosed, unnecessary and unmerited fees.

CLASS ACTION COMPLAINT

30.   On March 21, 2014, the New York Times published an article titled "*Third-Party Hotel Booking Sites Can Mislead Consumers*," describing the business tactics of third-party booking websites.[1]

31.   The article succinctly summarizes how third-party booking websites generate revenue. In short, they design advertising to mislead consumers into believing "they've landed on the official hotel website, but unknowingly they really have arrived at an unrelated site of a hotel booking company."

32.   Not only do third-party booking websites mislead consumers into believing they have booked with the actual hotel, they do not adequately disclose that they will be charged the full price of the reservation up front and that the booking is entirely nonrefundable.[2]

33.   Third-party booking websites engage in the same deceptive practices when receiving calls from mislead consumers. Indeed, as the article describes, an individual who worked in the hotel business for 25 years, and who taught a hospitality course at Cornell University, called a number she believed to be for Marriott but, even after asking to confirm she was speaking with a Marriott representative, she was falsely informed that she was when, in fact, she had contacted a call center for a third-party booking company.[3]

34.   A recent article describes a similar situation. A consumer was looking to book a hotel room for a vacation, was brought to a website designed to mimic the actual website of the hotel—including a picture of the hotel—but was actually a third-party booking company.[4] The article also notes that consumers "are charged hidden fees."

---

[1]  https:// nytimes.com/2014/03/22/your-money/third-party-hotel-booking-sites-can-mislead-consumers.html (last visited Feb. 10, 2020).

[2] *Id.*

[3] *Id.*

[4] https://www.tmj4.com/news/national/booking-a-vacation-beware-third-party-hotel-booking-sites (last visited Feb. 10, 2020).

CLASS ACTION COMPLAINT

35.     The Federal Trade Commission ("FTC") issued a Report to Congress titled "The Online Hotel Booking Market" (the "Report").[5] Among other things, the Report indicates that it is aware of complaints from consumers that "thought they were reserving their hotel rooms directly from an advertised hotel when they actually were booking the room through a third-party reseller. Complaints also involve concerns about payment and cancellation terms and other issues."[6]

36.     The FTC stated that it is "concern[ed] that third-party search ads and webpages . . . are not sufficiently transparent about the marketer's identity could mislead consumers seeking to book a hotel room directly from an advertised hotel."[7]

37.     The FTC also observed that:

> consumers who believe they are booking their hotel room directly from the advertised hotel rather than from a reseller may take away from the reseller's representations or omissions that important terms and conditions, such as payment or cancellation requirements, are the same as if they booked their rooms directly from the hotels. If the reseller's terms differ from those frequently required by hotels, the failure to disclose adequately the applicable information might mislead consumers and adversely affect their ability to make informed purchase decisions. [8]

38.     Indeed, deceptive practices of third-party booking companies are so rampant that Senator Steve Daines (R-MT) and Senator Amy Klobuchar (D-MN) introduced legislation on July 23, 2019, titled "Stop Online Booking Scams Act of 2019." Among other things, the proposed law would require all third-party booking companies to disclose that they are not affiliated with the hotel.

---

[5] https://www.ftc.gov/system/files/documents/reports/online-hotel-booking-market-federal-trade-commission-report-congress-recommended-enforcement-actions/p114 500_ftc_report_to_congress_re_the_online_hotel_booking_market.pdf (last visited Feb. 10, 2020).

[6] *Id.*

[7] *Id.*

[8] *Id.*

CLASS ACTION COMPLAINT

39.     Senator Klobuchar stated that "[A]s more and more people turn to online booking websites to plan their travel, [the bill] will help to crack down on bad actors and protect consumers."[9]

40.     In response to the bill, the President and CEO of the American Hotel & Lodging Association stated:

> According to recent research, consumers overwhelmingly (94 percent) want to know who they are doing business with when booking a hotel room online. Unfortunately, every day, deceptive websites, online ads and search engines mislead thousands of consumers into believing they are booking directly through a hotel's website or their call center, when in fact they have no relationship.[10]

41.     As explained below, Defendant's online ads and search engine results mislead thousands of consumers into believing just that.

42.     Defendant generates revenue through "Tax Recovery Charges & Service Fees." According to its confirmation email, the Tax Recovery Charges & Service Fees are described as follows:

> This charge includes the estimated amount we pay the hotel for occupancy related taxes owed by the hotel and any amounts charged to us for resort fees, cleaning fees, and other fees. The balance of the charge is a fee we, the hotel supplier and/or the website you booked on, retain as part of the compensation for our and/or their services which varies based on factors such as location, the amount, and how you booked.

Defendant does not disclose these fees to consumers at the time of booking, regardless of whether consumers attempt to book accommodations online or by phone.

43.     Rather, Defendant adds these exorbitant fees to previously-quoted room rates only after consumers provide their credit card information to Defendant. Indeed, as Defendant is well-aware, if it were to disclose the fees in addition to the advertised price of the hotel, no consumer would pay such a markup because the outrageous price would alert the consumer to the fact that the entity they are booking with is

---

[9]     https://www.klobuchar.senate.gov/public/index.cfm/2019/8/klobuchar-daines-introduce-bill-to-stop-online-booking-scams (last visited Feb. 10, 2020).

[10]     https://www.ahla.com/press-release/hotel-industry-commends-introduction-bipartisan-legislation-shield-consumers-online (last visited Feb. 10, 2020).

CLASS ACTION COMPLAINT

1  Defendant, and not the hotel itself. Plaintiffs and Class members thus do not assent to

2  paying these undisclosed fees and do so involuntarily.

3      44.    Moreover, the fee does not allow the actual hotel with which the

4  reservation was made to "recover" fees for taxes or services, nor does Defendant ever

5  pay any portion of the fee to the intended hotel. Rather, Defendant appends a fee to

6  every reservation in order to generate undeserved revenue at the consumer's

7  expense.[11]

8  **B.    Defendant's Travel Agency Agreement is Unconscionable and Unenforceable**

9      45.    Defendant likely will seek to enforce its unconscionable "Travel Agency

10 Agreement." Among other things, the agreement seeks to limit Defendant's liability,

11 automatically enrolls all customers in a "VIP Program" with a yearly fee that is not

12 disclosed on the customers' confirmation email, includes a Texas choice of law

13 provision, and requires a Texas venue for any disputes.

14     46.    For customers making reservations through the telephone, the Travel

15 Agency Agreement is never disclosed.

16     47.    The only way to access the alleged "terms and conditions" is to navigate

17 back to the home page, scroll to the very bottom of the page, and click "Terms." The

18 terms and conditions consist of fourteen, single-spaced pages and 10,000 words, are

19 inaccessible from the reservation page, and—beyond a single reference in

20 paragraph 35 thereto—never disclose that Defendant plans to subject customers to

21 substantial and previously undisclosed Tax Recovery and Service Fees that are a pure

22 surcharge intended to allow Defendant to profit from its deceptive business practices.

23     48.    Plaintiffs and all those similarly situated thus never assent to the "terms

24 and conditions" prior to transacting business with Defendant.

25     49.    The "terms and conditions" are unconscionable and unenforceable.

26

27

28
_____
[11] *See, e.g.*, https://www.elliott.org/travel-problems/avoid-most-expensive-service-fee/ (last visited Feb. 10, 2020).

CLASS ACTION COMPLAINT

50.    The "terms and conditions" are procedurally unconscionable because consumers did not freely consent to them because oppression and surprise tainted the agreement's alleged formation. Those who made reservations with Defendant over the telephone did not have the "terms and conditions" disclosed to them, nor were they able to discover them on their own because as consumers have alleged that Defendant has falsely represented itself as affiliated with the hotels and fails to disclose it is a third-party booking company. Those who made reservations online were not provided with a working hyperlink to the terms and conditions.

51.    The "terms and conditions" are substantively unconscionable because they are oppressively one-sided. In addition to failing to provide consumers like Plaintiffs a meaningful opportunity to assent to, let alone review, the terms and conditions prior to sale, Defendant seeks, among other things, to automatically enroll customers into its "Travel Agent VIP Program" whereby Defendant authorizes itself to charge all customers a $10 yearly fee that "will not be assessed as a separate line item" but instead is lumped into the "Tax Recovery Charges & Service Fees." This is done to conceal the existence of the yearly fee from consumers. Defendant also states the membership fee will not be reimbursed even if the customer cancels their reservation. The VIP program is not disclosed until paragraph 10.

52.    The "terms and conditions" also are substantively unconscionable because they authorize Defendant to (1) file a lawsuit against its customers when they request a chargeback from their credit or debit card company; and (2) charge its customers' credit or debit card to recovery any attorneys' fees Defendant incurs "to enforce" the "terms and conditions."

**C.    Defendant's Illusory Cancellation Policy**

53.    Defendant also defrauds consumers by misrepresenting the nature of its non-existent cancellation policy, which Defendant uses a shield to retain ill-gotten Tax Recovery and Service Fees it fails to disclose to customers prior to booking, and

impeding customers' efforts to cancel their reservations within the time frame provided by the hotels at which they booked.

54.    The terms and conditions which Defendant fails to disclose to its customers provide that

> [e]ach reservation is subject to the providers' cancellation policy, which varies by provider. In the case of hotels, condos, and room reservations the typical service provider usually requires notice of cancellation 24 to 72 hours prior to your arrival date. You may cancel your prepaid hotel reservation(s), but you will be charged the cancellation or change fee as stated on your confirmation receipt or indicated in the cancellation policy for the hotel.

55.    Defendant thus *purports* to inform customers—albeit unsuccessfully—that (1) most reservations may be cancelled for no charge within the provider's allowable cancellation period, and (2) prepaid reservations may be subject to a cancellation or change fee stated on a receipt customers do not receive until *after* they have provided their credit card information and booked a room.

56.    Elsewhere in its undisclosed terms and conditions, Defendant reiterates that "[t]here is NO change or cancellation fee charged if the customer has booked on most published rental car charges, dining reservations, hotel rates, airline reservations and service fees charged by Travel Agent." Accordingly, consumers like Plaintiffs who seek to cancel their reservations upon discovering Defendant imposed previously undisclosed fees should be able to do so at will.

57.    Yet, as Plaintiffs' experience demonstrates, Defendant willfully frustrates its customers' efforts to do so by seeking to impose a cancellation fee when none applies, all in an effort to line its own pockets at consumers' expense.[12]

---

[12]   https://www.trustpilot.com/review/getaroom.com?page=3 (last visited Feb. 10, 2020).

CLASS ACTION COMPLAINT

1
2
3
4
5
6
7
8



9      58.    Customers also report that Defendant often fails to respond to their

10  cancellation requests, or attempts to dissuade them from cancelling by threatening to

11  impose a hotel-mandated cancellation fee when non-exists,[13] all of which deprive

12  customers of the ability to avoid Defendant's outrageous fees following booking.

13
14
15
16
17
18
19
20
21
22
23
24
25
26
27



28  _____
[13]  https://www.trustpilot.com/review/getaroom.com?page=4  (last visited Feb. 10, 2020).

CLASS ACTION COMPLAINT

59.     Further, even when Defendant forbears from imposing a cancellation fee, it retains a fee purportedly paid in exchange for membership in its "VIP Program," which provides nothing in the way of services or benefits:

> There are some rates and membership fees that are specifically identified as nonrefundable that cannot be refunded once the service, car rental, cruise, or hotel room is booked. Travel Agent will retain the $10.00 VIP Membership fee as processing fee if the customer changes or cancels reservations booked from Travel Agent's unpublished rates (e.g. call center only specials or pre-negotiated promotions for any Travel Agent Service.)

The terms go on to reiterate that the "[VIP] membership fee will not be reimbursed even if the services by Travel Agent are cancelled."

60.     Moreover, customers who book a non-refundable room, often unwittingly, have no recourse upon discovering Defendant's undisclosed fees beyond cancelling their credit card and seeking assistance from their financial institution.[14]



61.     Defendant thus not only defrauds consumers at the point of sale, its practices also effectively prohibit consumers from securing a refund once they discover Defendant's fraud, forcing customers to pay Defendant's supracompetitive room rates and exorbitant and undisclosed fees under duress and involuntarily.

---

[14] https://www.trustpilot.com/review/getaroom.com?page=3 (last visited Feb. 10, 2020).

13

CLASS ACTION COMPLAINT

**D.    Consumer Complaints**

62.    Plaintiffs' experiences are by no means an isolated or outlying occurrence. Indeed, the internet is replete with complaints from Class members who were misled and deceived by Defendant.

63.    On Defendant's Better Business Bureau page, it has a one-star rating out of five. Many commenters indicate they would give Defendant a zero-star rating if possible. Below is a sampling of complaints:



**Alison T**
★★★★★                                                                     10/24/2019

I believed I was booking on the Don Cesar hotel website. While your advertised room rate of 189.88 was reasonable. Your recovery fee of $72.37 is unacceptable and should be considered fraudulent. This does not cover the hotel's resort fee which we had to pay in addition to Getaroom's total fee of $262.25. The most disconcerting fact is that according to the hotel, you are only paying them a room fee of $161.40. Hence, Getaroom.com charged us $262.25 and you paid the hotel $161.40. You made $100 on what I consider to be false advertising. Nowhere on the website did it say Getaroom.com when I made the reservation and your email reads Guest Reservations. It wasn't until speaking with the hotel that I could see what had happened and it was nonrefundable. You are scamming the public and should be taken to court. A $100 overcharge is fraud and Getaroom.com's business license should be revoked. I have tried to reach Getaroom.com by phone and am not able to ever get a person on the line. I had hoped this was an error that Getaroom.com would like to resolve.

**Justin H**
★★★★★                                                                     10/28/2019

SCAM SCAM SCAM As many others have experienced, I believed I had made a reservation directly on the Holiday Inn website. Immediately after checkout, my credit card was charged. I then received an email from "Getaroom.com" with a confirmation for a different hotel! I had been booked at the Best Western! However, I was still under the impression that I had booked directly through the hotel (because they spoof the URL, e.g. www.reservations.holidayinn.com). When I checked in at the hotel I did not recognize the "card on file" and had the hotel change it to my personal card. My initial thought was that there was just a mistake at the hotel. The staff did not know that this was a "3rd party booking". I called GetaRoom.com for a refund and invested nearly an hour of my life that I'll never get back talking to a representative in Bali, or some foreign place. We talked in circles and the customer service rep had the same canned responses. I really do feel sorry for the schmucks that have no other employment opportunity but to work for a scam company like GetaRoom.com. I wonder what the "pitch" is at their recruiting fairs... I bet the employees feel as scammed as I did.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



**JOHN C**


10/24/2019

THIEVES. STAY AWAY FROM THIS COMPANY! I mistakenly went through this site thinking it was the real hotel website for a business trip, when planes changed a month ahead of time they kept 100% of my money, they refused to refund any of it or change dates. stay away from getaroom.com



**Donna D**


10/05/2019

9/02/19 We called a LA QUINTA Hotel in AUSTIN, TX making a 2 night stay for a family funeral 9/27 & 9/28 . After checking our credit card GETAROOM CHARGED US FULL AMOUNT plus 35% money increase ALMOST A MONTH BEFORE OUR STAY. These people somehow intercepted the call to the LA QUINTA, THEN BOOKED US INTO SOMETHING CALLED AN EXTENDED CARE HOTEL WITH AN 'F' HOTEL RATING! They were extremely rude & their English was very bad, no refund no cancellation policy. They are completely a fraud company that needs to be closed. We have contacted our credit card company & CC attorneys to help solve this issue. FRAUD AT ITS HIGHEST FORMð??¡

**James A**
★★★★★

10/01/2019

I hate to repeat a theme but this is a fraudulent misleading company. I wish I could give them negative stars. I don't see how they could have an A+ rating when almost all their reviews and complaints are negative. I thought I was booking a Holiday Inn Riverview SC based on me Google searching. But after getting the receipt I found out it was through this company that added horrendous charges. When I tried to contact them to try to cancel and get a refund they opened a "complaint ticket" and said they would contact me within 7 days and despite me emailing them multiple times in the 2 weeks after they never responded. I finally called them and they said they couldn't do anything for me because it was a no refund reservation. I explained that I tried wouldn't have made a reservation through them if they didn't have the holiday inn logo in big bold letters. They claimed that there information is at the top of the page (in small letters) They refused to cancel my reservations and only offered a 20% refund on their fee. I tried to explain to them that I wanted to cancel the whole reservation as I felt that I was defrauded by them. Them refused to do anything. I'm filing a complaint with BBB and going to file a complaint with the Texas Attorney General's as well as my local Attorney General. I am also going to have my credit card company dispute the charge with them! Avoid this company at any cost

CLASS ACTION COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



**Michele M**
★★★★★                                                              09/30/2019

HORRIBLE RESERVATION SERVICE! I thought I was booking through the hotel and it was a thirty-party agency that added fees. I called to cancel right away and after arguing with them, they canceled the room, but they didn't refund my money. I then saw they didn't credit the money back to me after I received my credit card statement. I called to speak with the customer support team and was put on hold for thirty minutes. They still wouldn't credit me. I called my credit card company to dispute the charges. This company is corrupt!



**Jo B**
★★★★★                                                              09/18/2019

I would leave 0 stars if I could. This is a misleading scam. I thought I was booking through the hotel website. I booked the room to attend a conference, so called the listed number, which I thought was the hotel, and asked for the conference room rate. They said they were out of discounted rooms, which should have clued me into the fact that this wasn't the actual hotel but it did not. The whole exchange was intense, which also should have clued me in. As I need to attend this conference I went through the booking process. I didn't do the math when she gave me the total and only realized after receiving my confirmation email that I was charged $94 in service fees (the room was only $88 a night!). When I realized I had not gone through the hotel, I went directly to the hotel website, where I could have gotten the room without the fee, so almost $100 less. The hotels that contract with GetARoom should rethink their policies. I contacted ******** directly and there was nothing they could do. Even though not their fault, I will likely stick with chains I haven't been scammed when trying to reserve a room.

**Gary M**
★★★★★                                                              09/13/2019

I won't repeat all that is below, as most of it is exactly what I experienced. They are misleading. I thought I was speaking with the hotel directly. At no point did the person I was speaking to tell me he wasn't with the hotel chain I thought I was calling. When I called today to express my dissatisfaction, they were conveniently having a software problem and I needed to call back later. I've been unable to get someone on the phone since. I actually made the flight I thought I would miss, and the hotel was willing to cancel without penalty until she realized, "Oh, you didn't book through us. You booked through a third party." That is the first time I confirmed what I thought was wrong. Stay clear.

64.    There are also thousands of complaints on third-party websites relating to Defendant's deceptive business practices. One such review states:

CLASS ACTION COMPLAINT

This company is a complete scam. I wanted to book a one night stay in Denver, CO for my unit's Marine Corps Birthday Ball. I searched for the hotel website and found an ad sponsored website that showed the hotel's name in the URL. After clicking on this link I was taken to a website I thought was the hotel's website. When I clicked on the room I wanted I was taken to getaroom.com, which I thought was a website contracted by the hotel to handle their booking. The price for the room was listed as $119 for a single king size bed. I clicked on the book now button and was taken to a page which stated their no refund no cancellation policy and then asked for my credit card information. I gave it and clicked submit. I then was taken to the summary page saying my card was charged $210.02!!! I want to make it clear, no where during this process was the total amount of what was being charged displayed!

I looked at my confirmation email which showed I was charged $148.75 for the room and $61.27 on "tax recovery charges and service fees" (again, this was not displayed to me prior to purchasing the room). I then went back to the website and hit the back button to the page I saw the room. The room literally changed prices before my eyes from $119 to $148.

I immediately called customer service to ask for a refund. I was told repeatedly by a very rude female that she could only give me a 10% inconvenience fee refund but could not refund the money because of their policy. I repeatedly asked for a manager but was told "they are with another customer" and they were "just going to tell me the same thing". They refused to transfer me to the manager until I threatened to report this charge as fraudulent with my credit card company. I was then told I would be transferred to a "specialist" who could assist me. After sitting for a further 33 minutes on hold, I heard an automatic recording state, "this number is not a working number". . .[15]

65.    Another user on the same website posted the following:

They are not ethical. For me, they used a website that appeared to be the actual hotel website, did not identify themselves when they should have, and did not mention booking fees while they charged a 30 percent booking fee for a room that was its normal price. They were supposed to cancel charges on my credit card and did not. STAY AWAY![16]

66.    There are over 1,000 one-star reviews, *alone*, on the consumer website www.sitejabber.com.

67.    Nor is Defendant unaware that its practices deceive and defraud consumers. On one website, trustpilot.com, thousands of consumers have complained of the unlawful practices described herein and Defendant's failure to respond to their

---

[15] https://www.sitejabber.com/reviews/getaroom.com (last visited Feb. 10, 2020). (review by Ian S. on Nov. 12, 2019).

[16] *Id.* (answer by Larry S. on May 18, 2016).

subsequent inquiries. Only once consumers have made their grievances public does Defendant respond on the website and claim a representative "will review your case and reach out to you" because "[o]ur goal with your Trustpilot review is to promptly work for your satisfaction resulting in your improving the star rating."[17] In other words, Defendant addresses its customers' concerns only if those concerns threaten to impede Defendant's ability to continue to perpetuate its deceptive practices.

## **CLASS ACTION ALLEGATIONS**

68.     Plaintiffs bring this action on Plaintiffs' own behalf, and on behalf of the following Class pursuant to Fed. R. Civ. P. 23(a), 23(b)(2), and/or 23(b)(3):

**Nationwide Class:**

All persons or entities in the United States who purchased a hotel reservation through Defendant.

or, in the alternative,

**Multi-State Consumer Protection Class:**

All persons or entities in California or any state with similar laws[18] who purchased a hotel reservation through Defendant.

---

[17] https://www.trustpilot.com/review/getaroom.com (last visited Feb. 10, 2020).

[18] While discovery may alter the following, Plaintiffs assert that the other states with similar consumer fraud laws under the facts of this case include, but are not limited to: Arkansas (Ark. Code § 4-88-101, *et seq.*); Colorado (Colo. Rev. Stat. § 6-1-101, *et seq.*); Connecticut (Conn. Gen. Stat. § 42-110, *et seq.*); Delaware (Del. Code tit. 6, § 2511, *et seq.*); District of Columbia (D.C. Code § 28-3901, *et seq.*); Florida (Fla. Stat. § 501.201, *et seq.*); Hawaii (Haw. Rev. Stat. § 480-1, *et seq.*); Idaho (Idaho Code § 48-601, *et seq.*); Illinois (815 ICLS § 505/1, *et seq.*); Maine (Me. Rev. Stat. tit. 5 § 205-A, *et seq.*); Massachusetts (Mass. Gen. Laws Ch. 93A, *et seq.*); Michigan (Mich. Comp. Laws § 445.901, *et seq.*); Minnesota (Minn. Stat. § 325F.67, *et seq.*); Missouri (Mo. Rev. Stat. § 407.010, *et seq.*); Montana (Mo. Code. § 30-14-101, *et seq.*); Nebraska (Neb. Rev. Stat. § 59 1601, *et seq.*); Nevada (Nev. Rev. Stat. § 598.0915, *et seq,*); New Hampshire (N.H. Rev. Stat. § 358-A:1, *et seq.*); New Jersey (N.J. Stat. § 56:8-1, *et seq.*); New Mexico (N.M. Stat. § 57-12-1, *et seq.*); New York (N.Y. Gen. Bus. Law § 349, *et seq.*); North Dakota (N.D. Cent. Code § 51-15-01, *et seq.*); Oklahoma (Okla. Stat. tit. 15, § 751, *et seq.*); Oregon (Or. Rev. Stat. § 646.605, *et seq.*); Rhode Island (R.I. Gen. Laws § 6-13.1-1, *et seq.*); South Dakota (S.D. Code Laws § 37-24-1, *et seq.*); Texas (Tex. Bus. & Com. Code § 17.41, *et seq.*); Virginia (VA Code § 59.1-196, *et seq.*); Vermont (Vt. Stat. tit. 9, § 2451, *et seq.*); Washington (Wash. Rev. Code § 19.86.010, *et seq.*); West Virginia (W. Va. Code § 46A-6- 101, *et seq.*); and Wisconsin (Wis. Stat. § 100.18, *et seq.*). *See Mullins v. Direct Digital, LLC*, No. 13-cv-1829, 2014 WL 5461903 (N.D. Ill. Sept. 30, 2014), *aff'd*, 795 F.3d 654 (7th Cir. 2015).

or, in the alternative,

**California Class:**

All persons or entities in California who purchased a hotel reservation through Defendant.

69.    Together, the Nationwide Class, the Multi-State Consumer Protection Class and/or California Class will be referred to collectively as the "Class" or the "Classes."   Excluded from the Classes are: (i) Defendant, any entity in which any Defendant has a controlling interest or which has a controlling interest in any Defendant, and Defendant's legal representatives, predecessors, successors and assigns; (ii) governmental entities; (iii) Defendant's employees, officers, directors, agents, and representatives and their family members; (iv) all persons who make a timely election to be excluded from the Class; and (v) the Judge and staff to whom this case is assigned, and any member of the Judge's immediate family.

70.    Plaintiffs reserve the right to modify, change or expand the Class definition.

71.    <u>Numerosity</u>: Upon information and belief, the Class is so numerous that joinder of all members is impracticable. While the exact number and identities of individual members of the Class are unknown at this time, such information being in the sole possession of Defendant and obtainable by Plaintiffs only through the discovery process, Plaintiffs believe there are tens of thousands, if not hundreds of thousands, of Class members.

72.    <u>Existence and Predominance of Common Questions of Fact and Law</u>: Common questions of law and fact exist as to all members of the Class. These questions predominate over the questions affecting individual Class members. These common legal and factual questions include, but are not limited to:

a.    whether Defendant's advertisements and websites are false and misleading;

b.    whether Defendant intentionally designs its websites to mimic websites from hotel chains;

c.    whether Defendant conceals, or fails to adequately disclose, the alleged no-cancellation policy;

d.    whether Defendant conceals, or fails to adequately disclose, Tax Recovery Charges & Service Fees to consumers prior to sale; and

e.    whether Defendant is liable to Plaintiffs and the Class under applicable consumer protection statutes;

73.    <u>Typicality</u>: All of Plaintiffs' claims are typical of the claims of the Class since Plaintiffs purchased a reservation through Defendant, as did each member of the Class. Furthermore, Plaintiffs and all members of the Class sustained monetary and economic injuries including, but not limited to, ascertainable loss arising out of Defendant's wrongful conduct. Plaintiffs are advancing the same claims and legal theories on behalf of Plaintiffs and all absent Class members.

74.    <u>Adequacy</u>: Plaintiffs are adequate because their interests do not conflict with the interests of the Class they seek to represent, Plaintiffs have retained counsel competent and highly experienced in complex class action litigation, and Plaintiffs intend to prosecute this action vigorously. The interests of the Class will be fairly and adequately protected by Plaintiffs and Plaintiffs' counsel.

75.    <u>Superiority</u>: A class action is superior to all other available means of fair and efficient adjudication of the claims of Plaintiffs and members of the Class. The injury suffered by each individual Class member is relatively small in comparison to the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendant's conduct. It would be virtually impossible for members of the Class to individually and effectively redress the wrongs done to them. Even if the members of the Class could afford such individual litigation, the court system could not. Individualized litigation presents a potential for inconsistent or contradictory judgments. Individualized litigation also increases the delay and

CLASS ACTION COMPLAINT

expense to all parties, and to the court system, presented by the complex legal and factual issues of the case. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. Upon information and belief, members of the Class can be readily identified and notified based on, *inter alia*, Defendant's booking records and complaint database.

76.     Defendant has acted, and refused to act, on grounds generally applicable to the Class, thereby making appropriate final equitable relief with respect to the Class as a whole.

## VIOLATIONS ALLEGED

## COUNT I

## VIOLATIONS OF CALIFORNIA'S CONSUMER LEGAL REMEDIES ACT ("CLRA")
### (On Behalf of the California Class)

77.     Plaintiffs incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

78.     Plaintiffs bring this action individually and on behalf of the California Class.

79.     Defendant is a person as that term is defined in Cal. Civ. Code § 1761(c).

80.     Plaintiffs and the Class are "consumers" as that term is defined in Cal. Civ. Code § 1761(d).

81.     Defendant engaged in unfair and deceptive acts in violation of the CLRA by the practices described above, and by knowingly and intentionally concealing from Plaintiffs and Class members that Defendant is a third-party booking company and it would charge exorbitant fees that it failed to adequately disclose prior to making reservations. These acts and practices violate, at a minimum, the following sections of the CLRA:

(a)(2) Misrepresenting the source, sponsorship, approval or certification of goods or services;

(a)(5) Representing that goods or services have sponsorships, characteristics, uses, benefits or quantities which they do not have, or that a person has a sponsorship, approval, status, affiliation or connection which he or she does not have;

(a)(7) Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another; and

(a)(9) Advertising goods and services with the intent not to sell them as advertised.

82.    Defendant has engaged in deception, fraud, unfair practices, and concealment by the conduct, statements, and omissions described above, and by knowingly and intentionally concealing from Plaintiffs and the California Class members that Defendant is not a hotel, consumers could not cancel reservations made with Defendant as when booking with a hotel, and consumers were charged hidden fees not disclosed until after sale.

83.    Defendant was under a duty to Plaintiffs and the California Class members to disclose these facts because:

a.    Defendant was in a superior position to know the true state of facts;

b.    Plaintiffs and the Class members could not reasonably have been expected to learn or discover the facts solely within Defendant's possession;

c.    Defendant knew that Plaintiffs and the Class members could not reasonably have been expected to learn or discover those facts; and

d.    Defendant actively concealed and failed to disclose the aforementioned material facts from Plaintiffs and the Class.

84.    In failing to disclose the aforementioned facts at the time of sale, Defendant has knowingly and intentionally concealed material facts and breached its duty not to do so.

85.    The facts concealed or not disclosed by Defendant to Plaintiffs and the California Class members are material in that a reasonable consumer would have considered them to be important in deciding whether to make reservations through

Defendant or through the hotel itself. Had Plaintiffs and the California Class members known about the true facts, they would not have made reservations through Defendant.

86.    Plaintiffs and the other California Class members were injured as a result of Defendant's conduct in that Plaintiffs and the other California Class members made reservations they otherwise would not have made, overpaid for their reservations and did not receive the benefit of their bargain. These injuries are the direct and natural consequence of Defendant's misrepresentations and omissions.

87.    The injuries suffered by Plaintiffs and the California Class members are greatly outweighed by any potential countervailing benefit to consumers or to competition, nor are they injuries that Plaintiffs and the California Class members should have reasonably avoided.

88.    Plaintiffs and the other California Class members' injuries were proximately caused by Defendant's fraudulent and deceptive business practices.

89.    Plaintiffs provided Defendant with notice of its violations of the CLRA pursuant to Cal. Civ. Code § 1782(a) on February 7, 2019, and currently seek only injunctive relief under the CLRA. After the 30-day notice period expires under the CLRA, Plaintiffs will amend their complaint to seek monetary damages under the CLRA.

90.    Defendant's conduct in this regard was wanton, willful, outrageous, and in reckless indifference to the rights of Plaintiffs and the other California Class members and, as such, warrants punitive damages.

## **COUNT II**
## **VIOLATIONS OF CALIFORNIA BUSINESS AND PROFESSIONS CODE § 17200**
**(On Behalf of the California Class)**

91.    Plaintiffs incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

92.    Plaintiffs bring this action individually and on behalf of the California Class.

93.    The California Unfair Competition Law ("UCL") prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice" and "unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200.

94.    Defendant has engaged in unfair competition and unfair, unlawful or fraudulent business practices by the conduct, statements, and omissions described above, and by knowingly and intentionally concealing from consumers that Defendant is not a hotel, consumers could not cancel reservations made with Defendant as when booking with a hotel, and consumers were charged hidden fees not disclosed until after sale. Defendant should have disclosed this information because it was in a superior position to know the true facts, and Plaintiffs and California Class members could not reasonably be expected to learn or discover the aforementioned facts.

95.    These acts and practices have deceived Plaintiffs and are likely to deceive the public. In failing to disclose the aforementioned facts and suppressing other material facts from Plaintiffs and the California Class members, Defendant breached its duties to disclose these facts, violated the UCL, and caused injuries to Plaintiffs and the California Class members. The omissions and acts of concealment by Defendant pertained to information that was material to Plaintiffs and the California Class members, as it would have been to all reasonable consumers.

96.    The facts concealed or not disclosed by Defendant to Plaintiffs and the California Class members are material in that a reasonable consumer would have considered them to be important in whether to make reservations with Defendant or through the hotel itself. Had Plaintiffs and the California Class members known about the facts concealed by Defendant, they would not have purchased made reservations with Defendant.

CLASS ACTION COMPLAINT

97.     Plaintiffs and the other California Class members were injured as a result of Defendant's conduct in that they made reservation they otherwise would not have made and did not receive the benefit of their bargain. These injuries are the direct and natural consequence of Defendant's misrepresentations and omissions.

98.     Defendant's acts and practices are unlawful because they violate Cal. Civ. Code §§ 1668, 1709, 1710, and 1750 *et seq.*

99.     The injuries suffered by Plaintiffs and the California Class members are greatly outweighed by any potential countervailing benefit to consumers or to competition, nor are they injuries that Plaintiffs and the California Class members should have reasonably avoided.

100.    Plaintiffs and the other California Class members' injuries were proximately caused by Defendant's fraudulent and deceptive business practices.

101.    Plaintiffs seek to enjoin further unlawful, unfair and/or fraudulent acts or practices by Defendant, to obtain restitutionary disgorgement of all monies and revenues generated as a result of such practices, and all other relief allowed under Cal. Bus. & Prof. Code § 17200.

## COUNT III

## VIOLATION OF CALIFORNIA'S FALSE ADVERTISING LAW
### (On Behalf of the California Class)

102.    Plaintiffs incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

103.    Plaintiffs bring this action individually and on behalf of the California Class.

104.    Cal. Bus. & Prof. Code § 17500 states:

It is unlawful for any . . . corporation . . . with intent directly or indirectly to dispose of real or personal property . . . to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated . . . from this state before the public in any state, in any newspaper or other publication, or any advertising device, . . . or in any other manner or means whatever, including over the Internet, any statement . . . which is untrue or misleading, and which is

known, or which by the exercise of reasonable care should be known, to be untrue or misleading.

105.   Defendant caused to be made or disseminated throughout California and the United States, through advertising, marketing and other publications, statements that were untrue or misleading, and which were known, or which by the exercise of reasonable care should have been known to Defendant, to be untrue and misleading to consumers, including Plaintiffs and the other California Class members.

106.   Defendant has violated Cal. Bus. & Prof. Code § 17500 because the misrepresentations and omissions regarding Defendant not being a hotel, that consumers could not cancel reservations made with Defendant as when booking with a hotel, and that consumers were charged hidden fees not disclosed until after sale as set forth in this Complaint were material and likely to deceive a reasonable consumer.

107.   Plaintiffs and the other California Class members have suffered an injury in fact, including the loss of money or property, as a result of Defendant's unfair, unlawful, and/or deceptive practices. In making reservations with Defendant, Plaintiffs and the other California Class members relied on the aforementioned misrepresentations and/or omissions of Defendant. Defendant's representations were untrue because Defendant is not a hotel, consumers could not cancel reservations made with Defendant as if they had booked with a hotel, and they were charged hidden fees not disclosed until after sale. Had Plaintiffs and the other California Class members known this, they would not have made reservations with Defendant. Accordingly, Plaintiffs and the other California Class members did not receive the benefit of their bargain.

## **COUNT IV**

### **VIOLATION OF STATE CONSUMER PROTECTION STATUTES**
**(On Behalf of the Multi-State Consumer Protection Class)**

108.   Plaintiffs incorporate the preceding paragraphs as if fully set forth herein.

CLASS ACTION COMPLAINT

109.   Plaintiffs bring this action individually and on behalf of the Multi-State Consumer Protection Class.

110.   Plaintiffs and Multi-State Consumer Protection Class members have been injured as a result of Defendant's violations of the state consumer protection statutes listed above in paragraph 69 and footnote 18, which also provide a basis for redress to Plaintiffs and Multi-State Consumer Protection Class members based on Defendant's fraudulent, deceptive, unfair and unconscionable acts, practices and conduct.

111.   Defendant's conduct as alleged herein violates the consumer protection, unfair trade practices and deceptive acts laws of each of the jurisdictions encompassing the Multi-State Consumer Protection Class.

112.   Defendant has engaged in deception, fraud, unfair practices, and concealment by the conduct, statements, and omissions described above, and by knowingly and intentionally concealing from consumers that Defendant is not a hotel, consumers could not cancel reservations made with Defendant as when booking with a hotel, and consumers were charged hidden fees not disclosed until after sale.

113.   Defendant violated the Multi-State Consumer Protection Class states' unfair and deceptive acts and practices laws by engaging in unfair or deceptive acts or practices, including representing that making reservations through Defendant has characteristics, uses, benefits, and qualities which they do not have; deceiving consumers into believing Defendant is affiliated with the hotel when it is not; advertising its services with the intent not to sell them as advertised; and otherwise engaging in conduct likely to deceive.

114.   The facts concealed or not disclosed by Defendant to Plaintiffs and the Multi-State Consumer Protection Class Members are material in that a reasonable consumer would have considered them to be important in whether to make reservations with Defendant or through the hotel itself. Had Plaintiffs and the Multi-

State Consumer Protection Class members known about the facts concealed by Defendant, they would not have purchased made reservations with Defendant.

115.    Plaintiffs and the other Multi-State Consumer Protection Class members were injured as a result of Defendant's conduct in that they made reservation they otherwise would not have made and did not receive the benefit of their bargain. These injuries are the direct and natural consequence of Defendant's misrepresentations and omissions.

116.    The injuries suffered by Plaintiffs and the Multi-State Consumer Protection Class members are greatly outweighed by any potential countervailing benefit to consumers or to competition, nor are they injuries that Plaintiffs and the Multi-State Consumer Protection Class members should have reasonably avoided.

117.    Plaintiffs and the other Multi-State Consumer Protection Class members' injuries were proximately caused by Defendant's fraudulent and deceptive business practices.

118.    As a result of Defendant's violations, Defendant has been unjustly enriched.

119.    Pursuant to the aforementioned states' unfair and deceptive practices laws, Plaintiffs and Multi-State Consumer Protection Class members are entitled to recover compensatory damages, restitution, punitive and special damages, including but not limited to, treble damages, reasonable attorneys' fees and costs and other injunctive or declaratory relief as deemed appropriate or permitted pursuant to the relevant law.

## COUNT V

### FRAUDULENT CONCEALMENT
**(On Behalf of the Nationwide Class or, alternatively, the Multi-State Consumer Protection Class or, alternatively, the California Class)**

120.    Plaintiffs incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

121.    Plaintiffs bring this action individually and on behalf of the Class.

122.    The misrepresentations, nondisclosure, and/or concealment of material facts made by Defendant to Plaintiffs and the Class members, as set forth above, were known, or through reasonable care should have been known, by Defendant to be false and material and were intended to mislead Plaintiffs and the Class members.

123.    Plaintiffs and the Class members were actually misled and deceived and were induced by Defendant to make reservations they would not otherwise have purchased, or would have paid substantially less for by making the reservations directly with the hotel.

124.    Plaintiffs and the other Class members have suffered an injury in fact, including the loss of money or property, as a result of Defendant's unfair, unlawful, and/or deceptive practices. In making reservations with Defendant, Plaintiffs and the other Class members relied on the misrepresentations and/or omissions of Defendant relating to the following facts: Defendant is not a hotel, consumers could not cancel reservations made with Defendant as when booking with a hotel, and consumers were charged hidden fees not disclosed until after sale. Had Plaintiffs and the other Class members known this, they would not have made reservations with Defendant. Accordingly, Plaintiffs and the other Class members overpaid for their reservations and did not receive the benefit of their bargain.

125.    As a result of the conduct of Defendant, Plaintiffs and the Class members have been damaged in an amount to be determined at trial,

## COUNT VI

### UNJUST ENRICHMENT
**(On Behalf of the Nationwide Class or, Alternatively, on Behalf of the California Class)**

126.    Plaintiffs incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

127.    Plaintiffs bring this action individually and on behalf of the Class.

128.    Plaintiffs and members of the Class conferred a benefit on Defendant.

129.    Defendant had knowledge that this benefit was conferred upon it.

CLASS ACTION COMPLAINT

130.   Defendant has been, and continues to be, unjustly enriched at the expense of Plaintiffs, and Defendant's retention of this benefit under the circumstances would be inequitable.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves and members of the Class, respectfully requests that this Court:

A.   determine that the claims alleged herein may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and issue an order certifying the Class as defined above;

B.   appoint Plaintiffs as the representatives of the Class and their counsel as Class counsel;

C.   award all actual, general, special, incidental, statutory, punitive, and consequential damages to which Plaintiffs and Class members are entitled;

D.   award pre-judgment and post-judgment interest on such monetary relief;

E.   grant appropriate injunctive and/or declaratory relief, including, without limitation, an order that requires Defendant to disclose it is not affiliated with any hotel, that there is no-cancellations at any time, and to disclose all fees prior to purchase;

F.   award reasonable attorney's fees and costs; and

G.   grant such further relief that this Court deems appropriate.

Dated: February 11, 2020

**CARLSON LYNCH, LLP**

By:   /s/ Todd D. Carpenter

Todd D. Carpenter
tcarpenter@carlsonlynch.com
1350 Columbia St., Ste. 603
San Diego, California 92101
Tel:   (619) 762-1900

Katrina Carroll
kcarroll@carlsonlynch.com
**CARLSON LYNCH, LLP**
111 W. Washington St., Ste. 1240
Chicago, Illinois 60602
Tel:   (312) 750-1265

CLASS ACTION COMPLAINT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Joseph G. Sauder
jgs@sstriallawyers.com
Joseph B. Kenney
jbk@sstriallawyers.com
**SAUDER SCHELKOPF LLC**
555 Lancaster Avenue
Berwyn, Pennsylvania 19312
Tel:   (610) 200-0581

Daniel O. Herrera
**CAFFERTY CLOBES MERIWETHER & SPRENGEL LLP**
150 S. Wacker Dr., Suite 3000
Chicago, IL 60606
dherrera@caffertyclobes.com
150 S. Wacker, Ste 3000
Chicago, Illinois 60606
Tel:   (312) 782-4880

*Attorneys for Plaintiffs and the Putative Class*

CLASS ACTION COMPLAINT